**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

CLIFTON BRUMFIELD,                              :

                          Plaintiff,

       -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                        Defendant.            :

Case No. 3:07-cv-181

District Judge Thomas M. Rose
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") terminating Plaintiff's Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

A recipient of disability bears a continuing burden to show that he or she is disabled. *See, Mathews v. Eldridge,* 324 U.S. 319, 336 (1976); *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 n.1 (6th Cir, 1994). A recipient of disability benefits will be found to be no longer disabled if there has been medical improvement in his or her impairments since the time of the most recent favorable determination, other than improvement that is not related to the recipient's ability to work and the recipient is not able to engage in substantial gainful activity. *See,* 42 U.S.C. §423(f). In determining whether a recipient's entitlement to disability benefits has ended, the Commissioner uses an eight-step sequential evaluation process. *See,* 20 C.F.R. §404.1594(f)(1)-(8); *see also, Johnson v. Secretary of Health and Human Services,* 948 F.2d 989, 991 (6th Cir. 1991). That the claimant currently not be engaged in "substantial gainful activity," is the first step in the

sequential evaluation process for determining that disability has ended. *See, Id.*  The other steps can summarized as follows:  (2) If not engaged in substantial gainful employment, does the recipient have an impairment which would result in a new finding of disability?  (If yes, the disability is found to be continuing.).  (3) If no, has there been medical improvement in the condition which was originally found to be disabling?  (If no, the disability is usually found to continue).  (4) If there has been medical improvement, is it related to the ability of the recipient to do work?  (If no, disability is probably found to be continuing, subject to step 5).  (5) This step contains the exceptions to continuing disability even when no medical improvement is found in step 3 or the improvement is not related to ability to do work in step 4.  (6) If medical improvement is shown, is the recipient's current impairment nonetheless severe?  (If no, disability ceases).  (7) If the current impairment is severe, can the recipient do the work which he did before determined to be disabled?  (If yes, the disability ceases).  (8) If the recipient cannot do the work done in the past, can the recipient do other work?

Plaintiff filed an application for SSD in March, 1994, alleging disability from March, 1993, due to a knee impairment. (Tr. 33, 36).  Plaintiff's application was granted at the hearing level and he received a closed period of disability from March, 1993, his alleged onset date, through September, 1994, when he returned to work as a security guard. (Tr. 197; 202-11).

Plaintiff filed a application for SSD on June 22,1998, alleging disability due to heart, kidney, and knee impairments, fatigue, and hypertension. (Tr. 258-68).  Plaintiff's application was granted with an onset date of May 9, 1998, on the basis that he met a Listing for kidney failure. *See* Tr. 12.  The Commissioner conducted a continuing disability review and based on that review the Commissioner determined that Plaintiff's disability ceased on May 1, 2002, because he no longer

met Listing 6.02A and he was therefore no longer disabled. (Tr. 199-201; 212-17; 278-99). After he appealed that decision through the administrative process, Plaintiff sought judicial review of the Commissioner's decision and the matter was remanded to the Commissioner. *Brumfield v. Commissioner,* No. 3:04cv072 (filed Mar. 4, 2004) (Doc. 1; 11; 12; 13; Tr. 627-54).

During that time, Plaintiff filed applications for SSD and SSI with a protective filing date of November 20, 2003, alleging disability from September 26, 2003. *See* Tr. 562. Plaintiff's applications were denied initially and on reconsideration. *Id.* The Commissioner consolidated these applications with Plaintiff's appeal of the cessation of his benefits. *Id.*

On remand of Plaintiff's benefit cessation claim and on consideration of his November, 2003, applications, a hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 589-622), who determined that Plaintiff's benefits were properly terminated and that he was not entitled to benefits based on his November, 2003, applications. (Tr. 562-78). The Appeals Council denied Plaintiff's request for review, (Tr. 554-58; 559-78), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff was not entitled to benefits, Judge Padilla found that the most recent favorable medical decision finding that Plaintiff was disabled is the determination dated July 9, 1998, known as the comparison point decision (CPD). (Tr. 567, ¶ 1). Judge Padilla also found that at the time of the CPD, Plaintiff had chronic renal failure that met Listing 6.02A. *Id.*, ¶ 2. Judge Padilla found further that as of May 1, 2002, Plaintiff did not have an impairment or combination of impairments that met or equaled the Listings and therefore he had consequently experienced a significant medical improvement by May 1, 2002, which improvement was related to his ability to work. *Id.*, ¶ 4. Judge Padilla then found that as of May 1, 2002, Plaintiff had severe

residuals of renal transplant surgery, coronary artery disease with associated left ventricular hypertrophy, residuals of right knee surgery, and dysthymia.  (Tr. 568, ¶ 5).  Judge Padilla determined that as of May 1, 2002, Plaintiff has the residual functional capacity to perform a limited range of light work.  (Tr. 571, ¶ 5).  Judge Padilla then used sections 202.13 through 202.15 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing.  (Tr. 577, ¶ 10).  Judge Padilla concluded that Plaintiff's entitlement to benefits under the Act effectively ceased as of July 31, 2002, the end of the second calendar month after the month in which his disability ceased.  (Tr. 578).  Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act.  (Tr. 578).

As noted above, Plaintiff has a history of low back and right knee impairments and the Commissioner found that he was disabled during the period March 10, 1993, through September 3, 1994, as a result of those impairments.

On May 15, 1998, Plaintiff was hospitalized for complaints of extreme weakness, fatigue, and vomiting blood.  (Tr. 315-16).  Plaintiff was diagnosed with atrial fibrillation, a non-Q wave acute myocardial infarction, and chronic renal failure.  *Id.*  Plaintiff was discharged from the hospital but admitted again six days later after coughing up blood.  (Tr. 331).  Plaintiff was treated and discharged after undergoing a surgical procedure to construct a left brachiocephalic arteriovenous fistula and placement of a right internal jugular PermaCath for use during his dialysis treatments.  (Tr. 336-36).  Also in May, 1998, Plaintiff was diagnosed with Goodpasture's syndrome.  (Tr. 359).

In September, 1999, a cardiac stress test indicated that Plaintiff had poor exercise

tolerance limited by dizziness and hypotension. (Tr. 488). In addition, a myocardial perfusion scan demonstrated dilation of the left ventricle and an echocardiogram revealed that Plaintiff had severe left ventricular hypertrophy. (Tr. 484-86).

On September 21, 1999, Plaintiff underwent a cardiac catheterization which revealed moderate pulmonary hypertension and at least moderate left ventricular dysfunction with a globally hypokinetic left ventricle and a moderately reduced ejection fraction of 32 percent. (Tr. 344-45). In addition, Plaintiff had artherosclerotic heart disease with mild non-obstructive coronary artery disease. *Id.*

Plaintiff underwent a kidney transplant in February, 2000. (Tr. 409). Although Plaintiff's prognosis from the kidney transplant point of view was relatively good, Dr. First, director of transplantation, expressed concerns about his co-morbid conditions including the Goodpasture's syndrome and coronary artery disease. *Id.*

In June, 2000, Plaintiff underwent a thoracentesis to treat his complaints of shortness of breath. (Tr. 357-61). Subsequently, Plaintiff reported "feel[ing] great". (Tr. 365).

A January 7, 2002, echocardiogram revealed moderate to severe concentric left ventricular hypertrophy with reduced diastolic compliance of the left ventricle, and right ventricular dimensions at the upper limits of normal. (Tr. 483).

Dr. Goodenough has been Plaintiff's treating physician since April, 2000. (Tr. 373-77). On February 21, 2002, Dr. Goodenough reported that Plaintiff had Goodpasture's syndrome and underwent a renal transplant in 2000. *Id.* Dr. Goodenough also reported that Plaintiff had persistent fatigue, observable motor fatigue, muscle weakness, daily headaches, painful lymph nodes, memory problems, difficulty concentrating, and low grade fever. *Id.* Dr. Goodenough noted

that Plaintiff's ability to sit was not limited, he was able to stand for 30 minutes continuously, walk for 10 minutes, lift up to 30 pounds, and carry up to 20 pounds.  *Id.*

Dr. Cullis has been Plaintiff's treating cardiologist since May, 1998.  (Tr. 472-90). In August, 2002, Dr. Cullis reported that Plaintiff had hypertension, hypertensive heart disease, previous kidney transplant, depression, and Goodpasture's syndrome.  *Id.*  Dr. Cullis also reported that Plaintiff had moderate to severe ventricular hypertrophy, evidence of significant left ventricular systolic and diastolic dysfunction and pulmonary hypertension, had shortness of breath with minimal activity, fatigued easily with minimal exertion, had an extremely poor exercise tolerance, and that when he exerts himself, he probably gets a significant increase in his end-diastolic pressure exacerbating the pulmonary hypertension and causing his symptoms.  *Id.*  Dr. Cullis noted that Plaintiff had a fairly marked limitation and was disabled, that he was not able to perform even sedentary work for an 8-hour day, and that he fit a classification of class 3 congestive heart failure. *Id.*  Dr. Cullis noted further that Plaintiff was able to lift/carry up to 5 pounds frequently, stand/walk for 3 hours in an 8-hour day and for 1 hour without interruption, sit for 4 hours in an 8-hour day and for 1 hour without interruption, and that he was able to work a maximum of 3-4 hours a day.  *Id.*

In February, 2005, Dr. Goodenough reported that Plaintiff was able to stand/walk for 3 hours in an 8-hour day, sit for 3 hours in an 8-hour day and for 1 hour without interruption, lift/carry up to 5 pounds occasionally, and that he was unemployable.  (Tr. 966-97).

Dr. Cullis continued to treat Plaintiff and on August 8, 2005, he reported that Plaintiff's diastolic hypertension had never been particularly well controlled despite treatment with various medications, an April, 2002, echocardiogram indicated an improvement in his ejection fraction although he continued to have moderate to severe concentric left ventricular hypertrophy,

and that his hypertension was still not optimally controlled. (Tr. 683-84). Dr. Cullis also reported that Plaintiff's fatigue was likely related to his hypertensive heart disease, his history of pulmonary hypertension, and possibly to his medications and depression. *Id.* Dr. Cullis opined that Plaintiff could probably do sedentary work for 3 to 4 hours a day. *Id.*

On May 16, 2006, Dr. Cullis noted that he was treating Plaintiff for hypertensive heart disease and cardiomyopathy, that he reported he generally felt well, was short of breath on mild to moderate exertion and that his EKG showed an incomplete right bundle branch block. (Tr. 970). Dr. Cullis also noted that Plaintiff was doing reasonably well, that his main complaint was dyspnea, that his dyspnea was probably due to hypertensive heart disease, and that he was being treated primarily for diastolic heart failure. *Id.*

The medical advisor (MA) testified that from 2002 forward, Plaintiff's issues were primarily related to blood pressure, cardiac symptoms, and his knee, that he had severe cardiac dysfunction during the time he was on dialysis, that since he underwent the kidney transplant he has had some persistent left ventricular hypertrophy, but his ejection fractions have returned to normal, and that since May, 2002, he has not satisfied the Listings. (Tr. 608-17) . The MA also testified that deconditioning was an issue, that considering deconditioning, Plaintiff was probably at a sedentary level of work, and that he could perform sedentary work with a sit/stand option.

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by improperly rejecting the opinions of his treating physicians, Dr. Cullis and Dr. Goodenough. (Doc. 6).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v.*

*Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. §

404.1527(d)(2) (1997)).  In other words, greater deference is generally given to the opinions of

treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social*

*Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378

F.3d 541, 544 (6th Cir. 2004).  "A physician qualifies as a treating source if the claimant sees her

'with a frequency consistent with accepted medical practice for the type of treatment and/or

evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original)

(quoting 20 C.F.R. § 404.1502).  However, a treating physician's statement that a claimant is

disabled is of course not determinative of the ultimate issue.  *Landsaw v. Secretary of Health and*

*Human Services,* 803 F.2d 211, 213 (6th Cir. 1986).  A treating physician's opinion is to be given

controlling weight if it is well supported by medically acceptable clinical and laboratory techniques

and it is not inconsistent with the other substantial evidence in the record.  *Cutlip v. Secretary of*

*Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

        The reason for the "treating physician rule" is clear:  the treating physician has had

a greater opportunity to examine and observe the patient.  *See, Walker v. Secretary of Health and*

*Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992).  Further, as a result of his or her duty to cure

the patient, the treating physician is generally more familiar with the patient's condition than are

other physicians.  *Id.* (citation omitted).

        In rejecting Dr. Cullis' opinion, the Commissioner essentially determined that it was

not based on any objective findings but on Plaintiff's subjective complaints.  (Tr. 572-73).  In

rejecting Dr. Goodenough's opinion, the Commissioner fount that it was inconsistent with the other

evidence of record.  (Tr. 573).

As noted above, both Dr. Cullis and Dr. Goodenough have been Plaintiff's long-term treating physicians.  Specifically, Dr. Cullis has been Plaintiff's treating cardiologist since May, 1998, and Dr. Goodenough has been Plaintiff's treating physician since April, 2000.  Both physicians have essentially opined that Plaintiff is disabled, their opinions are consistent, and they are supported by the objective medical evidence.

For example, Dr. Cullis has consistently noted that Plaintiff has hypertensive heart disease and cardiopmyopathy which have resulted in his dyspnea and fatigue.  Dr. Cullis' opinion is supported by  objective tests of record including the echocardiograms.   Dr. Cullis has been consistent in his opinion that as a result of his dyspnea and fatigue, Plaintiff simply is not capable of working more than 3-4 hours a day.

Similarly, Dr. Goodenough has consistently reported that Plaintiff has, *inter alia*, persistent fatigue, motor fatigue, and muscle weakness which have contributed to his being able to perform work-related physical activities for, at most, 6 hours a day.  As with Dr. Cullis' opinion, Dr. Goodenough's opinion is supported by the objective medical evidence of record.

The only opinions which arguably contradict treating physicians Dr. Cullis' and Dr. Goodenough's opinions are the opinions of the non-treating, non-examining reviewing physicians and the MA.  Under the facts of this case, the Commissioner erred by rejecting the opinions of Plaintiff's treating cardiologist and treating physician and by relying, instead, on the opinions of the reviewing physicians and the MA.  Therefore, the Commissioner's decision is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted.

10

The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. §405(g).  If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted);  *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court concludes that all of the factual issues have been resolved and that the record adequately establishes Plaintiff's entitlement to benefits.  Specifically, as noted above, Drs. Cullis and Goodenough have been Plaintiff's long-term treating physicians, they have essentially opined that Plaintiff is not capable of performing substantial gainful activity, and their opinions are supported by the objective medical evidence.  In addition, the only evidence which arguably conflicts with Drs. Cullis' and Goodenough's opinions are the opinions of the non-treating, non-examining reviewing physicians and MA.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled and therefore not entitled to benefits under the Act be reversed.  It is further recommended that this matter be remanded to the Commissioner for the payment of benefits consistent with the Act.

February 19, 2008.

*s/ Michael R. Merz*
Chief Magistrate Judge Michael R. Merz

11

## NOTICE  REGARDING  OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).